IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EUGENE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:10-cv-206-JPG-DGW |
| | ) | |
| DONALD HULICK, SGT. WAGNER, | ) | |
| OFFICER JOHN DOE, and NURSE JANE | ) | |
| DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER TO SHOW CAUSE

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Donald G. Wilkerson following Defendant Timothy Wagner's motion for summary judgment (Doc. 93). Plaintiff Eugene Williams, an inmate formerly housed at Menard Correctional Center ("Menard"), alleges that Wagner, a correctional sergeant at Menard, was deliberately indifferent to Plaintiff's health and safety by failing first to *prevent* and then to *halt* an attack by fellow inmate Michael Johnson. Plaintiff asserts these failures violated his Eighth Amendment right to be free from cruel and unusual punishment.

For the following reasons, the Court grants summary judgment in favor of Wagner on the failure to *prevent* theory, and orders Plaintiff to show cause why, in light of the currently undisputed facts, summary judgment should not be granted in favor of Wagner on the failure to *halt* theory as well.

## BACKGROUND

Plaintiff, originally proceeding *pro se*, filed this action under 42 U.S.C. § 1983 asserting violations of his constitutional rights while he was incarcerated at Menard. Plaintiff alleges that

1

on April 16, 2008, he and his cellmate, Michael Johnson, were handcuffed and taken to the shower area.  Plaintiff alleges that Defendant John Doe failed to sufficiently search Johnson for weapons or other contraband before Plaintiff and Johnson were handcuffed.  After locking Plaintiff and Johnson in the shower area, Johnson's handcuffs were released first and Johnson began stabbing Plaintiff with a pen while Plaintiff was still cuffed.  Plaintiff's Complaint alleges that Defendants Wagner and John Doe looked on and did not intervene until the attack abated. Plaintiff also alleges that following the attack, he remained locked and bleeding in the shower area for approximately fifteen to twenty minutes while Wagner and other correctional officers searched for the key to unlock the door.

Plaintiff further alleges that prior to Defendant Donald Hulick's (the warden at the time of attack) arrival at Menard, prison staff removed a prisoner's handcuffs *before* placing a prisoner in a locked area with another inmate.  However, once Hulick arrived at Menard, he allegedly changed the procedure so that inmates' handcuffs were removed one-by-one *after* placing a prisoner in a locked area with another inmate.

The District Court completed its preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A and, among other counts previously disposed of in this case, allowed Plaintiff to proceed under the following count:

> **Count 3**:  Against Defendants Wagner and Doe for being deliberately indifferent to his health and safety by failing to halt the attack by inmate Johnson, in violation of Plaintiff's Eighth Amendment rights.

Wagner now moves for summary judgment on Count 3, arguing he is entitled to summary judgment because Plaintiff did not inform him, nor was he aware, that Plaintiff needed to be protected from Johnson.  Wagner also raises a defense of qualified immunity.  In response,

Plaintiff asserts there is a question of fact as to whether Wagner knew he was placing Plaintiff in a position that would likely result in serious harm.  Further, Plaintiff asserts that Wagner knew there was a higher risk of harm in placing handcuffed, violent inmates in the shower with un-handcuffed inmates, and therefore there exists a question of fact as to whether Wagner is entitled to qualified immunity.

Now before the Court is the Report by Magistrate Judge Wilkerson.  The Report correctly observes that Count 3, as written after the preliminary review under 28 U.S.C. § 1915A, contains only the theory that Wagner was deliberately indifferent to Plaintiff's health and safety by failing to *halt* the attack.  However, neither Wagner's motion for summary judgment, nor Plaintiff's response, contains argument on that theory.  Instead, the parties focus their efforts on the question of whether Wagner was deliberately indifferent to Plaintiff's health and safety by failing to *prevent* the attack.

The Report recommends the Court restate Count 3 to include the failure to *prevent* theory.  It then recommends granting summary judgment in favor of Wagner on the failure to *prevent* theory.  Next, the Report recommends identifying the material facts not in dispute, providing notice to the parties, allowing for response, and then granting summary judgment in favor of Wagner on the original failure to *halt* theory.  Finally, the Report recommends a finding that Wagner is entitled to qualified immunity.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and SDIL-LR 73.1(b), Plaintiff filed objections (Doc. 94) to the Report's recommendation that summary judgment be entered in favor of Wagner on the theories that he failed to *prevent* and *halt* the attack.  Wagner filed a response.  (Doc. 95).

**LEGAL STANDARD**

Where a party timely and specifically objects to a magistrate judge's Report and Recommendation, the Court must undertake a *de novo* review of those portions to which objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); SDIL-LR 73.1(b); *Govas v. Chalmers,* 965 F.2d 298, 301 (7th Cir. 1992).  The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1); SDIL-LR73.1(b).  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection was made.  *Willis v. Caterpillar Inc.,* 199 F.3d 902, 904 (7th Cir. 1999).

***Summary Judgment***

Plaintiff's specific objections are to the Report's recommendation of summary judgment on both the failure to *prevent* and *halt* theories.  Therefore, the Court reviews these issues *de novo*.

Summary judgment is appropriate only if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000).  The party seeking summary judgment bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323.

In responding to a summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *see also Serednyj v. Beverly Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence ... the

4

nonmoving party may not rest on mere allegations or denials in its pleadings").  A mere scintilla of evidence supporting the nonmoving party's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin,* 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.,* 694 F.3d 919, 922 (7th Cir. 2012).  Summary judgment is appropriate only if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.,* 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).  The Court considers the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party—here, Plaintiff. *See Anderson,* 477 U.S. at 255; *Spath,* 211 F.3d at 396.

**ANALYSIS**

***Currently Undisputed Material Facts***

Based on the Report's recommended findings, the Court adopts the following currently undisputed material facts and finds them not clearly erroneous after a thorough review of the record.

Prior to April 16, 2008, Plaintiff and Michael Johnson, his cellmate, were generally on good terms.  Johnson had made no threats towards Plaintiff, and Plaintiff did not tell anyone that he felt threatened by Johnson.  Immediately prior to April 16, 2008, Johnson began acting "crazy" after a minor incident and Plaintiff no longer spoke to him. There is no evidence in the

record, however, that Plaintiff ever felt threatened by Johnson or that he ever indicated to anyone that he was fearful of Johnson.

On April 16, 2008, Menard was on lockdown. As a result, inmates being moved to the shower area were individually handcuffed before leaving their cells. This procedure was employed when Plaintiff and Johnson were moved to the shower area. After the inmates had been patted down by other correctional officers, they moved down a stairwell to the shower area where Wagner was stationed. It was Wagner's duty to place the inmates in the designated shower area. An old handcuff procedure would have required Wagner to remove an inmate's handcuffs *before* placing that inmate in the shower area. However, the handcuff procedure that Wagner utilized on April 16, 2008 required him to first place all[1] the inmates in the shower area. Once the inmates were in the shower area, Wagner locked the door behind them.  All inmates were still in handcuffs at this point. Once the door was locked, each inmate, one at a time, came to the door, placed their hands through a "chuckhole," and was un-cuffed.

Unfortunately for Plaintiff, Johnson was un-cuffed before he was. As Plaintiff placed his hands through the chuckhole to be un-cuffed, Johnson began stabbing him in the back with a pen. Wagner ordered the inmates to stop fighting and then sprayed Mace into the shower. This caused Johnson to stop stabbing Plaintiff and, along with the other inmates, to retreat to the back of the shower area while Plaintiff remained next to the door.

After the attack, Plaintiff was told by "internal affairs" that Johnson "is known for stabbing his cellies and stuff like that." Wagner testified that Plaintiff's and Johnson's cell house was where the "most aggressive" inmates were housed. There is no evidence, however, that Wagner had any information on either Plaintiff's or Johnson's particular level of dangerousness

---

[1] According to Sgt. Wagner, approximately eight inmates were placed in the shower area at a time during a lockdown such as the one on April 16, 2008.

(or vulnerability), what they were incarcerated for, or whether they posed an individualized or other specific threat to any other person. Wagner had no other interaction with Plaintiff after this incident.

### Count 3—Theory of Deliberate Indifference in Failing to Prevent the Attack

Plaintiff's first objection is to the Report's recommendation that summary judgment be granted in favor of Wagner on the issue of whether he was deliberately indifferent in failing to protect (and, therefore, to *prevent* the attack against) Plaintiff.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005). This duty includes protecting prisoners "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

To succeed on a failure to protect claim, a plaintiff must first establish, objectively, that "he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir.2010) (*quoting Farmer,* 511 U.S. at 834). Second, a plaintiff must establish that the defendant prison officials acted with deliberate indifference to that risk. *Id*. The second element is more difficult to demonstrate and requires a subjective inquiry into a defendant prison official's state of mind. A prison official may be held liable only if he *knows* an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Whether Plaintiff was actually incarcerated under conditions posing a substantial risk of serious harm does not appear to be the question at issue between the parties. Looking at the evidence in the light most favorable to Plaintiff, a jury could reasonably conclude that Johnson

was a particularly dangerous inmate, as "internal affairs" was aware of his tendency to assault his cellmates.

The real dispute here is whether Wagner knew about the risk, and whether he failed to take action if he knew of it.  This second element – the subjective component of Plaintiff's cause of action – is the crux of the debate.  In failure to protect cases, "the debate often exclusively concerns what the prison official knew and when he knew it." *Pavlick v. Mifflin*, 90 F.3d 205, 210 (7th Cir. 1996).  Plaintiff must establish that Wagner "had *actual* knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756 (emphasis added).

### 1.  Johnson's Predatory Nature

Wagner argues he cannot be held liable for failing to prevent the attack because he had no knowledge that Plaintiff required protection from Johnson.  Wagner emphasizes that Plaintiff did not communicate to him that he was in any danger, and Plaintiff even testified that there "[w]asn't no need" to tell *anyone* he felt threatened by Johnson.

In cases involving inmate-on-inmate violence, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety."  *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).  This, however, is not the *only* mechanism that can be used to prove actual knowledge.  The Seventh Circuit Court of Appeals has found that a deliberate indifference claim may be predicated on either the victim's particular vulnerability or the predatory nature of the assailant.  *See Brown*, 398 F.3d at 911; *Billman v Ind. Dept. of Corr.*, 56 F.3d 785 (7th Cir. 1995).  A deliberate indifference claim "may

be predicated on custodial officers' knowledge that a *specific* individual poses a *heightened risk* of assault to even a large class of detainees." *Brown,* 398 F.3d at 915 (emphasis added).

It is undisputed that the west cell house of Menard – where Plaintiff and Johnson were cellmates and where the attack occurred – houses the "most aggressive" inmates at the facility. It is also undisputed that Wagner considered *all* inmates at Menard to be dangerous and that a prisoner left handcuffed in the shower could be harmed by another prisoner.  From these facts, along with Plaintiff's allegation that prison officials admitted they were aware of Johnson's predatory nature, Plaintiff asks the Court to find a question of fact as to whether Wagner knew he was placing Plaintiff in a position that would likely result in serious harm.  A failure to protect claim, however, cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown*, 398 F.3d 913.  At best, Plaintiff has established that Wagner knew that prisons are generally dangerous places and that *some* officials at Menard were aware of Johnson's predatory nature.  There is no showing that Wagner *himself* was aware of a "specific" individual's "heightened risk of assault" or that Plaintiff was particularly vulnerable.  There is no showing that Wagner was even aware that Plaintiff and Johnson were cellmates.  Therefore, Plaintiff's attempt to predicate deliberate indifference on Wagner's alleged knowledge of Johnson's predatory nature is unsuccessful.

### 2.  Handcuff Procedures

Plaintiff next attempts to predicate deliberate indifference on the theory that "this procedure of leaving inmates handcuffed with other aggressive inmates who were not handcuffed could cause harm."

In *Farmer*, the Supreme Court did acknowledge that the obviousness of a risk could serve as a predicate for deliberate indifference and that "a factfinder may conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious." 511 U.S. at 842. This route is limited, however, as a plaintiff must show that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Id*. at 842-43.

Plaintiff has made absolutely no showing that the risk of the new handcuffing procedure was longstanding, pervasive, or well-documented.  There is no evidence in the record indicating that an attack had previously occurred in the shower area under the new procedure.  The record is, in fact, void of evidence indicating that *any* violence had *ever* resulted from the new procedure.

Plaintiff also fails to show that Wagner ever expressly noted an obvious substantial risk to inmate safety resulting from the new handcuff procedures.  Wagner testified that the procedure of un-cuffing inmates one-by-one while they were locked inside the shower area "[p]robably" exposed inmates to a higher risk of harm.  Plaintiff relies on this answer as proof that Wagner knew of a substantial risk of serious harm. The Court, however, is not convinced. Wagner, in fact, testified that there could also be a higher risk of harm to the correctional officers or others if inmates were un-cuffed one-by-one *outside* the shower area.  Wagner's references to such indeterminate and hypothetical probabilities do not constitute a showing that he actually recognized a *substantial* risk of serious harm to Plaintiff from the new procedure. Therefore, Plaintiff's attempt to predicate deliberate indifference on the obviousness of the risk must also fail.

In sum, the Court, having thoroughly reviewed the entire record, finds not even a scintilla of evidence demonstrating that Wagner had actual knowledge of, or even *should* have been

aware of, a substantial risk to Plaintiff's health and safety.  Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.  Because no genuine issue of material fact exists regarding the subjective component of the alleged offense, summary judgment on the failure to *prevent* theory is granted in favor of Wagner.

### Count 3—Theory of Deliberate Indifference in Failing to Halt the Attack

Plaintiff's second objection is to the Report's recommendation that the Court (after identifying the facts not in dispute and allowing for response) grant summary judgment in favor of Wagner on the issue of whether he was deliberately indifferent in failing to *halt* the attack on Plaintiff.

Prison officials who actually *knew* of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

Plaintiff essentially asks the Court to infer a material issue of fact where one simply does not exist.  Accepting Plaintiff's allegations as true, Wagner left Plaintiff bleeding in the shower with Johnson after the attack for fifteen to twenty minutes until he was able to unlock the door and remove Plaintiff.  From these facts, Plaintiff argues that Wagner acted with deliberate indifference in failing to *halt* the attack.

Plaintiff cites *Peate* as proof that the Seventh Circuit Court of Appeals has previously upheld claims of deliberate indifference where a prison official fails to stop or break up a fight. In that case, however, the defendant correctional officer was alleged to have actually *re-armed* the inmate-attacker with a weapon after having broken up a prior attack on the plaintiff only minutes before.  The Court of Appeals found sufficient evidence – including multiple witness

affidavits corroborating the defendant's re-arming of the inmate-attacker – to overcome the District Court's grant of summary judgment.  In the matter currently before this Court, however, *both* sides are in agreement that Wagner's actions halted the attack on Plaintiff.

In deposition, Plaintiff stated, "…I just got -- started getting stabbed in my back, getting stabbed in my back… and then they sprayed Mace on him, they sprayed Mace on him, *and it got him back from me, from stabbing me*…." (Williams Dep. Tr. 13: 5-10) (emphasis added).  When asked who exactly sprayed the Mace, Plaintiff responded, "Wagner, Wagner, the sergeant." (Williams Dep. Tr. 24:9-10).

Even looking at the facts in the light most favorable to Plaintiff, the Court cannot ignore Plaintiff's admission that Wagner's action of spraying Mace into the shower halted the attack. No evidence whatsoever has been presented to the Court that would suggest Wagner's response to the attack was anything but reasonable.   Taking Plaintiff at his word, Wagner's actions were in fact the very reason why the attack came to an abrupt end.

The Seventh Circuit has reiterated that "[w]hen there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion—as long as the losing party is given notice and an opportunity to come forward with its evidence." *Osler Inst. Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003); *see also Celotex Corp.*, 477 U.S. at 326; *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996).  Here, there are currently no material facts in dispute preventing the Court from granting summary judgment in Wagner's favor on the failure to *halt* theory.  Plaintiff, therefore, is hereby notified and given an opportunity to respond and show cause why, in light of the currently undisputed facts, the Court should not consider granting summary judgment in favor of Wagner.

*Defenses—Qualified Immunity*

The Report also recommends finding Wagner entitled to qualified immunity on the failure to *prevent* theory, as well as on the failure to *halt* theory (after notifying the parties and affording an opportunity to respond). Plaintiff raised no specific objection to this segment of the Report and instead only raised objections to a grant of summary judgment on the deliberate indifference claims.

A plaintiff's burden in overcoming a claim of qualified immunity is a heavy one, as he must show that the defendant violated a constitutional right that was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As indicated in the preceding analyses, there is no showing that Plaintiff's constitutional rights were violated when he was placed in a shower while handcuffed with an inmate who attacked him. Nor do the currently undisputed facts establish that Plaintiff's constitutional rights were violated by Wagner's efforts to *halt* the attack.

Wagner is entitled to qualified immunity on the failure to *prevent* theory. Further, there is currently no genuine issue of material fact that would prevent a finding of qualified immunity on the failure to *halt* theory as well. However, on this discrete issue, the parties are hereby notified and afforded an opportunity to respond before the Court enters final judgment.

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation (Doc. 93), including its statement of undisputed material facts, and hereby **RESTATES** Count 3 of the Complaint as follows:

**COUNT 3**: Against Defendants Wagner and Doe for being deliberately indifferent to his health and safety by failing to prevent and halt the attack by inmate Johnson, in violation of Plaintiff's Eighth Amendment rights.

13

**FURTHER**, the Court **GRANTS IN PART** Defendant Wagner's motion for summary judgment (Doc. 87) on Count 3 to the extent it alleges he was deliberately indifferent to Plaintiff's health and safety by failing to *prevent* the attack by inmate Johnson on the basis of qualified immunity. The Court **RESERVES RULING** on the remainder of Wagner's summary judgment motion.

**FURTHER**, Plaintiff is ordered to show cause on or before April 4, 2014, as to why, in light of the undisputed material facts, the Court should not grant summary judgment in favor of Wagner on the theory that he was deliberately indifferent to Plaintiff's health and safety by failing to *halt* the attack by inmate Johnson.

The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same at the close of the case.

**IT IS SO ORDERED.**
**DATED:  March 18, 2014**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

14